# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued March 6, 2015          Decided April 21, 2015

No. 14-3031

UNITED STATES OF AMERICA,
APPELLEE

v.

DARLENE MATHIS-GARDNER,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:11-cr-00100)

*A.J. Kramer*, Federal Public Defender, argued the cause and filed the briefs for appellant. *Michelle M. Peterson*, Assistant Federal Public Defender, entered an appearance.

*Nickolai G. Levin*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the briefs were *William J. Baer*, Assistant U.S. Attorney, and *James J. Fredricks*, Attorney. *Adam D. Chandler*, Attorney, entered an appearance.

Before: BROWN, SRINIVASAN and WILKINS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* WILKINS.

WILKINS, *Circuit Judge*:

The question before the Court is whether and to what extent a district court must explain its decision to deny a motion to terminate supervised release. We conclude that while a district court is required to consider certain factors before granting or denying a motion to terminate supervised release, there is no requirement that the district court explain its decision to deny such a motion so long as the court's reasoning is discernible from the record. In the present case, however, we cannot discern the District Court's reasoning from the record. We therefore vacate the District Court's judgment and remand for reconsideration with adequate explanation.

## I.

In April of 2011, Darlene Mathis-Gardner pleaded guilty to charges of conspiracy to defraud the United States and making false claims against the United States. The charges were related to the falsification of information regarding the performance of government contracts. She was sentenced to concurrent eighteen-month terms of imprisonment and concurrent three-year terms of supervised release and ordered to perform community service and to pay restitution.

Mathis-Gardner served her time without incident and began her term of supervised release on December 31, 2012. On February 25, 2014, Mathis-Gardner filed a motion for early termination of her supervised release pursuant to 18 U.S.C. § 3583(e). The Government supported her motion. On April 23, 2014, the District Court denied the motion in a minute order that stated, in its entirety, "It is hereby ordered that defendant's motion is DENIED."

Mathis-Gardner filed a timely notice of appeal.

## II.

Terminating supervised release is governed by 18 U.S.C. § 3583(e)(1). The statute provides that

> The court may, after considering the factors set forth in [Title 18] section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)—
> (1) terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice[.]

*Id.*

On its face, the statute requires district courts to consider certain factors before *terminating* supervised release and discharging the defendant, but one could argue that the statute does not expressly require a district court to consider these factors before *denying* a motion to terminate supervised release. Nonetheless, other circuits that have considered the issue have either held or strongly implied that the district court is required to consider the statutory factors when reviewing a motion for early termination, regardless of whether that motion is granted or denied. *See, e.g.*, *United States v. Emmett*, 749 F.3d 718, 720 (9th Cir. 2014) ("Section 3583(e) requires a district court to "consider[]" particular . . . sentencing factors, and explaining whether these factors

weigh in favor of early termination is part and parcel of considering the factors."); *United States v. Mosby*, 719 F.3d 925, 930-31 (8th Cir. 2013) (referencing district court's familiarity with defendant's characteristics in determining that summary denial of early termination motion was not abuse of discretion); *United States v. Lowe*, 632 F.3d 996, 998 (7th Cir. 2011) ("[W]e find the district court abused its discretion in failing to consider the statutory factors."); *United States v. Gammarano*, 321 F.3d 311, 315 (2d Cir. 2003) ("We have previously held that district courts must consider the factors . . . in deciding whether to modify or terminate a term of supervised release."); *United States v. Pregent*, 190 F.3d 279, 283 (4th Cir. 1999) ("[B]ecause the district court followed the statutory mandate to consider both Pregent's conduct and the interests of justice and concluded that Pregent's behavior did not warrant an early termination of supervised release, the district court did not abuse its discretion . . . ."); *United States v. Jeanes*, 150 F.3d 483, 484-85 (5th Cir. 1998) ("The statute directs the court to take into account a variety of considerations . . . After weighing these factors, the court may discharge the defendant from supervised release . . . .").

While not dispositive, the fact that at least six circuits have interpreted § 3583(e)(1) as requiring the district court to consider the specified § 3553(a) factors, as well as the fact that the Government has not challenged this interpretation, strongly indicates this interpretation is correct. Requiring consideration of the specified § 3553(a) factors is also consistent with our precedent and Supreme Court case law interpreting 18 U.S.C. § 3582(c), a similarly worded sentence modification statute. *See Freeman v. United States*, 131 S. Ct. 2685, 2691 (2011); *see also United States v. Lafayette*, 585 F.3d 435, 440 (D.C. Cir. 2009). We therefore conclude that a district court must consider the specified § 3553(a)

factors before denying a motion for early termination of supervised release.

## III.

Although other circuits have roundly accepted that district courts are bound to consider the specified § 3553(a) factors before deciding on a motion to terminate early release, there is some dispute about whether and to what extent a district court must explain its decision. In the Seventh and Ninth Circuits, "the district court must give some indication that it has considered the statutory factors in reviewing a motion for early termination of supervised release." *Lowe*, 632 F.3d at 998; *see also Emmett*, 749 F.3d at 821-22 (remanding because the record didn't contain sufficient explanation, but noting that "[o]n remand, the district court need not give an elaborate explanation of its reasons for accepting or rejecting Emmett's arguments"). The Eighth Circuit, however, has held that the district court is not required to explain its denial of an early termination motion. *See Mosby*, 719 F.3d at 931.

Even where courts require an explanation for denying a motion to terminate supervised release, the real question on review is whether the record allows the appellate court to discern that the district court appropriately exercised its discretion after considering the statutory factors. Thus, in *Emmett* the Ninth Circuit vacated the trial judge's order because "the single explanation in the record d[id] not provide a reason for rejecting [the defendant's] arguments or explain why his request should be denied under the applicable legal standard," 749 F.3d at 821. And the Second Circuit—which requires its district courts to state that they have considered the statutory factors—has held that such a statement need not come in the order denying relief, so long as it appears during

a hearing or elsewhere in the record.  *See Gammarano*, 321 F.3d at 316.

Where, as here, the District Court does not spell out its reasoning at all, we must strike a delicate balance.  Our review for abuse of discretion does not permit us to "substitute our judgment" for that of the trial court, *King v. Palmer*, 950 F.2d 771, 786 (D.C. Cir. 1991), so we cannot decide the issue by determining whether we would have reached the same conclusion.  Furthermore, we cannot just reflexively presume that the learned judge appropriately exercised his discretion and considered all of the relevant factors, because that would risk turning abuse of discretion review into merely a "rubber stamp."  *Moore v. National Ass'n of Securities Dealers, Inc.,* 762 F.2d 1093, 1106 (D.C. Cir. 1985); *see also Ross v. City of Waukegan*, 5 F.3d 1084, 1089 (7th Cir. 1993).  Nonetheless, we agree that there may be instances where no explanation for denying a motion to terminate supervised release is necessary, a point made by Judge Nguyen's dissent in *Emmett*, 794 F.3d at 824-25, such as where an explanation was provided when denying a previous motion and no new facts were presented in a subsequent request.  Where clear and compelling reasons to deny relief leap out from the record, requiring an explanation from the district court to avoid reversal for abuse of discretion would elevate form over substance.  *See, e.g.*, *Nunez v. Allstate Ins. Co.*, 604 F.3d 840, 848 (5th Cir. 2010) (no abuse of discretion to exclude testimony of purported expert without explanation, where four other judges had previously excluded his testimony due to his lack of qualifications and speculative opinions); *Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1084 (7th Cir. 1987) (no explanation is required when denying a "foolish" motion for sanctions).  In sum, "when the reasons for denying a colorable motion are apparent on the record," *Szabo Food Service*, 823 F.2d at

1084, or when granting relief "was clearly appropriate from the face of the record," *Katz v. Household Intern., Inc.*, 36 F.3d 670, 673 (7th Cir. 1994), we can properly review whether the district court appropriately exercised its discretion, even without an explanation.

But this is not a case where the reasons for denying the motion are apparent from the record. According to Mathis-Gardner's early termination petition, she served her prison time without incident and has exceeded the community service requirement instituted by the District Court, including by working to develop new programs to help ex-offenders. She submitted several letters from members of her community in support of early termination; these letters demonstrate both that she has continued to accept responsibility for her actions and that she has made efforts to let the mistakes she made be a lesson to herself as well as to others. Perhaps most significantly, the Government *strongly supported* early termination in her case, acknowledging "that the defendant has not only complied with the conditions of her supervised release, but . . . has also taken rehabilitative steps that go above and beyond the Court-ordered requirements," noting that "Ms. Mathis-Gardner's frank acceptance of responsibility for her criminal conduct has not wavered and she has thoroughly committed to a different way of life," and opining that "[t]he resources of the Probation Office would be better used for supervision of offenders who have not taken the rehabilitative steps that this defendant has." S.A. 1-2. In consideration of these factors, "the government urge[d] the Court to grant the Motion." S.A. 2.

In *United States v. Lussier*, 104 F.3d 32, 32 (2d Cir. 1996), the Second Circuit explained that "[o]ccasionally, changed circumstances—for instance, exceptionally good behavior by the defendant or a downward turn in the defendant's ability to pay a fine or restitution imposed as

conditions of release—will render a previously imposed term or condition of release either too harsh or inappropriately tailored to serve the general punishment goals of section 3553(a)." Here, Mathis-Gardner advanced a substantial argument that her post-sentencing conduct met this high burden—an assessment shared by the government. In such circumstances, the record must provide some indication of the trial court's reasons for denying a §3583(e)(1) motion.

Nothing in the record indicates what factors the District Court considered in denying early termination. The Government—tasked on appeal with defending the District Court's judgment—argues that the District Court put some significance on the performance of community service over three years at a rate of 120 hours per year (as opposed to simply the completion of 360 hours of community service). But it is far from clear from the record that the District Court, during sentencing, put any independent significance on spreading out the community service over three years rather than simply wanting to ensure that all of the required hours were completed. At sentencing, the District Court noted the many people who had come to support Mathis-Gardner and acknowledged that "[t]his isn't your typical sentencing in any way, shape or form." J.A. 250. The District Court concluded that "[o]bviously [Mathis-Gardner] ha[s] been deterred. There is no question about that in my mind. There's no question [she] ha[s] accepted responsibility. None. Zero." J.A. 252. Citing the need for general deterrence, the District Court determined that "[i]n this case, there has to be jail time . . . [and] I don't think a sentence with jail time alone is enough either. I think there needs to be community service" "as a lesson to others where they [can] see [Mathis-Gardner] in the community." J.A. 253-54. "So you are going to have to do your jail time first and then you are going to have to do your community service next, and you will do that during a

period of what's called supervised release . . . I think in this case, a combination of jail time combined with community service is plenty." J.A. 254-55. The District Court clearly believed that community service was important at sentencing, but the record does not explain why the District Court would have wanted supervised release to continue once the community service obligation was completed.

## IV.

The District Court focused its sentencing decision on the need for general deterrence, and specifically determined that jail time and community service would promote this aim. Mathis-Gardner served her prison time and completed the mandated 360 hours of community service. It is impossible to discern from the record how or why denying the motion to terminate comported with consideration of the relevant § 3553(a) factors, and the District Court gave us no explanation to assist our review. This Court cannot conclude that the District Court appropriately exercised its discretion under these circumstances. We therefore vacate the District Court's denial of Mathis-Gardner's motion for early termination of supervised release and remand to the District Court for reconsideration consistent with this opinion. *Cf. Jackson v. Culinary School of Washington, Ltd.*, 59 F.3d 254, 256 (D.C. Cir. 1995) (remanding where "impossible to assess whether the district court abused its discretion" due to lack of explanation given when granting request for declaratory judgment). We see no other choice, lest we abdicate "our responsibility to review [discretionary] rulings carefully and to rectify any erroneous application of legal criteria and any abuse of discretion." *Wagner v. Taylor*, 836 F.2d 578, 586 (D.C. Cir. 1987).

*So ordered.*